HAUER and another, copartners, d/b/a NORTHVIEW, Respondents, v. CHRISTON, Appellant.

*No. 254. Argued May 6, 1969.—Decided June 6, 1969.*
(Also reported in 168 N. W. 2d 81.)

148

For the appellant there were briefs by *James T. Christon* of Wauwatosa, pro se, and oral argument by *Donald R. Hunter* of Milwaukee.

For the respondents there was a brief and oral argument by *James A. Hemmer* of Milwaukee.

HALLOWS, C. J.   We overlook the threshold question of whether an assigned judge sitting outside of his territorial jurisdiction can disregard the rules of the court in which he is sitting. This case was not assigned or removed to the court presided over by Judge TRAEGER. If it were, it would follow the local rules of the venue. Here, Judge TRAEGER was assigned to the Milwaukee

county court to hear the case. We think a judge on such an assignment is bound by the local rules and should, when in Rome, do as the Romans do. Uniformity in the administration of justice can only be obtained when only one set of rules prevail in a locality.

The facts present a more difficult question concerning the power of a trial judge to strike an answer and dismiss a counterclaim of a party for not being prepared for trial. Here, the defendant was also a lawyer, apparently trying his own case, but we view the case not as an exercise of power for unpreparedness of Christon as an attorney but unpreparedness of Christon as a party. This is the more favorable view to judge the action of a trial judge because the power to strike a client's answer for the acts of his attorney is more limited than to strike for the acts of the party.

The plaintiff argues the court has the power to strike a pleading under sec. 885.11, Stats., but this section is not applicable. This section deals with the unlawful refusal or the neglect of a party to appear or to testify and provides the court may strike the pleading and give judgment against the person disobeying the order. However, here the defendant did not unlawfully refuse to testify but merely stated he was not prepared to try the case because of the unavailability of witnesses. The purpose of this section in respect to the refusal to testify is related to the suppression of evidence and thus a presumption may be raised that the evidence is detrimental to the cause of the party. This is akin to the presumption which arises upon the failure of a party to call an available witness within his power to call to substantiate his case.

The plaintiff also argues the court has the inherent power to strike the defendant's pleading. We think this is true and we so held in *Latham v. Casey & King Corp.* (1964), 23 Wis. 2d 311, 127 N. W. 2d 225. But such inherent power is not exercised on the basis of contempt

but upon the necessity of the court to maintain the orderly administration of justice and the dispatch of its business. However, there are serious constitutional limitations upon the exercise of this inherent power both to dismiss a defendant's pleading and to dismiss a plaintiff's complaint, although in the latter case a distinction has been made that a plaintiff cannot ask the court to hear his case and also refuse to obey a court order related to the action. In the case of the defendant courts have reasoned his pleading could not be stricken because he does not voluntarily seek the aid of the court. We think the distinction is not valid. If a person has a right to bring an action it would seem the constitutional due process provisions would be violated by dismissal just as much as in the case of a defendant who is ordered to answer and has a right to defend himself.

From an examination of the record it is clear the dismissal of the defendant's answer and counterclaim was in the nature of a punishment for not being ready for trial on the trial date. In a sense it was based on a contempt of court, although the trial court did not make a finding of contempt. The defendant asked for his day in court, but the trial judge did not allow his case to go to trial even though the defendant was unprepared. If the trial had been had the defendant could have cross-examined the plaintiffs' witnesses, testified himself and put in such other evidence as was available to him, but instead the trial court denied him such right.

Such ruling raises the serious question of whether it constituted a violation of due process under the fourteenth amendment of the United States Constitution. In the early case of *Hovey v. Elliott* (1897), 167 U. S. 409, 413, 17 Sup. Ct. 841, 42 L. Ed. 215, the United States Supreme Court took the view the trial court had no power to strike an answer and grant a default judgment for contempt. The contempt consisted of the failure of the defendant to deposit certain bonds, the subject of the suit,

in court. The court said, "The fundamental conception of a court of justice is condemnation only after hearing. To say that courts have inherent power to deny all right to defend an action and to render decrees without any hearing whatever is, in the very nature of things, to convert the court exercising such an authority into an instrument of wrong and oppression, and hence to strip it of that attribute of justice upon which the exercise of judicial power necessarily depends."

The *Hovey* rule was explained and modified in *Hammond Packing Co. v. Arkansas* (1909), 212 U. S. 322, 29 Sup. Ct. 370, 53 L. Ed. 530, which involved a court order for the taking of testimony of the defendant's agent and officers and the inspection of its books. The statute provided for the striking of the answer for noncompliance. The defendant refused to comply with the order and the answer was struck and a default judgment entered against the defendant. This judgment was affirmed by the supreme court and *Hovey* was distinguished on the ground it involved the denial of all rights to defend as a mere punishment while the *Hammond Case* was a failure of the defendant to produce material evidence in its possession. The court found the sanction for its action in the law-making power to create a presumption of fact as to the bad faith and the untruth of the answer begotten from the suppression or the failure to produce the evidence. The supreme court took the view that the striking of the answer and the granting of the default judgment was only remotely punishment and the generating force of the power was the right to create a presumption flowing from the failure to produce. In this view, due process was denied in a contempt by the refusal to hear the case while due process was preserved in the *Hammond Case* by the presumption that the refusal to produce evidence material to the administration of due process was an admission of want of merit in the asserted defense. In *Hovey* the striking of the answer had no

relation to its merits in the contempt case, but it did in the case of the refusal to produce evidence.

These two cases are discussed and reexamined in *Societe Internationale v. Rogers* (1958), 357 U. S. 197, 78 Sup. Ct. 1087, 2 L. Ed. 2d 1255, which involved the fifth amendment, due process and a construction of Rule 37 of the federal rules of civil procedure. As we read these cases, the trial court has the inherent power to strike the defendant's answer, but if done as a contempt there is a denial of due process. It may be argued in the instant case that Christon was given a hearing on the issue of why he was unprepared for trial. It is true the record does show some argument between counsel and the trial judge relating to the defendant's timely resourcefulness in preparing for trial. However, under this view the trial court abused its power since there were no established rules of the Milwaukee county court providing for striking the answer upon the defendant's failure to be ready for trial. It is questionable if such a rule would meet constitutional requirements of due process when it is possible to afford such a defendant the right to try his case as best he can. Certainly when a party is diligent in his preparation and still through no fault of his own is unprepared to try his case, he should not be penalized. The striking of the answer and the counterclaim and the granting of the default judgment can only be explained on the basis of a contempt.

The constitutional question of the trial court's power to strike the answer of a defendant and grant a default judgment was recognized but not decided in *Maloney v. McCormick* (1923), 181 Wis. 107, 193 N. W. 966. This case involved the construction of the predecessor statute to sec. 885.11 (5) relied on by the plaintiff. The plaintiff also relies on *Kentucky Finance Corp. v. Paramount Auto Exchange Corp.* (1920), 171 Wis. 586, 178 N. W. 9, reversed 262 U. S. 544, 43 Sup. Ct. 636, 67 L. Ed. 1112, for the proposition the court has inherent power to strike

out the answer of the defendant. This case involved the dismissal of a complaint with prejudice on the ground a foreign corporation did not comply with the section requiring foreign corporations to submit their officers to adverse examinations if ordered to do so on a penalty of dismissal. This section was somewhat similar to present sec. 885.11 but applied only to foreign corporations. This court sustained the judgment but was reversed by the United States Supreme Court in 262 U. S. 544 on the ground the statute violated the equal protection clause of the constitution because the same penalty was not applied to domestic corporations as was applied to foreign corporations.

We hold the trial court has an inherent power to dismiss a complaint and also to strike an answer and grant a default judgment, but whether such power is inherent or given by statute, the exercise of the power is limited by the requirement of due process of the fourteenth amendment of the United States Constitution. However, we need only to decide now that the fourteenth amendment is violated when an answer is stricken and a default judgment entered for contempt against the defendant who is not prepared for trial when there are no established court rules promulgated covering such a result.

We think rules might be made and justified based upon the necessity in modern crowded courts of maintaining the efficient administration of justice in the orderly processing and hearing of cases. But a dismissal must bear a reasonable relationship to the merits of the case or, as we stated in *Latham v. Casey & King Corp., supra,* must be under established rules reasonably necessary to the administration of justice and the orderly dispatch of the court's business. However, we do not decide that the penalty of dismissal for the unpreparedness on the part of an attorney should be visited upon his client.

If the attorney is in contempt or unprepared he may be personally punished, but his client should not normally be made to bear the consequences of his transgression. For a collection and discussion of numerous cases holding court orders striking a party's pleading unconstitutional, none of which, however, are factually identical to this case, *see* Annot. (1950), *Punishment of civil contempt in other than divorce cases by striking pleading or entering default judgment or dismissal against contemner,* 14 A. L. R. 2d 580. *See also* Annot. (1943), *Constitutionality, construction, and application of statutes or rules of court which permit setting aside a plea and giving judgment by default, or dismissing suit, because of disobedience of order, summons, or subpoena duces tecum requiring production of documents,* 144 A. L. R. 372.

*By the Court.*—Judgment reversed, with directions to reinstate the pleadings and to order the cause to trial.