**2025 WI 19**

# Supreme Court of Wisconsin



IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
LESLIE M. SMITH, ATTORNEY AT LAW

OFFICE OF LAWYER REGULATION,
*Complainant,*

*v.*

LESLIE M. SMITH,
*Respondent.*

No. 2024AP2337-D
Decided May 28, 2025

ATTORNEY DISCIPLINARY PROCEEDING

¶1 PER CURIAM. This matter is before the court on Attorney Leslie M. Smith's petition for consensual license revocation pursuant to Supreme Court Rule (SCR) 22.19,[1] based on her inability to defend a pending disciplinary investigation by the Office of Lawyer Regulation

---

[1] SCR 22.19(1) provides that "[a]n attorney who is the subject of an investigation for possible misconduct or the respondent in a proceeding may file with the supreme court a petition for the revocation by consent of his or her license to practice law."

(OLR) in which she is accused of violating SCRs 20:8.4(b)[2] and (c),[3] relating to her commission of criminal acts. In *United States v. Leslie M. Smith*, Case No. 1:24-cr-19-SEB-MG (S.D. Ind.), Attorney Smith was convicted of one count of health care fraud, three counts of wire fraud, and four counts of tax evasion. Upon the OLR's prior motion, this court summarily suspended Attorney Smith's license to practice law pursuant to SCR 22.20 (summary license suspension on criminal conviction) based on the above criminal convictions. *In re Disciplinary Proceedings Against Smith*, No. 2024XX1363-D, unpublished order (Wis. July 23, 2024). The OLR recommends granting Attorney Smith's petition.[4] Based on the contents of the petition and the OLR's recommendation, this court agrees that it is appropriate to grant Attorney Smith's petition for consensual license revocation and therefore revokes her license to practice law in Wisconsin, effective the date of this order.

## Background

¶2     Attorney Smith was admitted to the Wisconsin bar on September 28, 2018. During the pertinent time period, Smith lived and worked in Indianapolis, Indiana, and was employed as the office manager for Healthy Feet, LLC, a provider of durable medical equipment, including oximeter devices. Attorney Smith's duties included submitting claims for Medicaid reimbursement and preparing the business owner's individual income tax returns.

---

[2] SCR 20:8.4(b) provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]"

[3] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

[4] SCR 22.19(3) provides, in pertinent part:

> If a complaint has not been filed or if a referee has not been appointed in a pending disciplinary proceeding, the petition shall be filed in the supreme court and shall include the director's summary of the misconduct allegations being investigated. Within 20 days after the date of filing of the petition, the director shall file in the supreme court a recommendation on the petition.

¶3    On June 7, 2023, the United States filed a criminal complaint alleging that Attorney Smith committed one count of health care fraud in violation of 18 U.S.C. § 1347(a). On February 5, 2024, the United States filed an information charging Attorney Smith with one count of health care fraud (in violation of 18 U.S.C. § 1347(a)), three counts of wire fraud (in violation of 18 U.S.C. § 1343), and four counts of tax evasion (in violation of 26 U.S.C. § 7201). That same day, Attorney Smith and the United States filed a plea agreement in which she agreed to plead guilty to all eight counts and stipulated to the salient facts in the information as a factual basis for her plea. Attorney Smith entered a plea of guilty to the eight counts on May 8, 2024, and was sentenced to 66 months in federal prison. Attorney Smith was ordered to pay $2,341,655.08 in restitution and to forfeit her interests in several pieces of real and personal property and financial accounts.

¶4    The underlying facts relating to these criminal convictions, as set forth in the pleadings in the criminal proceeding and Attorney Smith's petition, are as follows:

Count 1: Health Care Fraud

¶5    Between July 3, 2020 and December 30, 2022, without the knowledge or consent of the owner of Healthy Feet, Attorney Smith submitted approximately 288 fraudulent claims for reimbursement to Medicaid for oximeter devices. The claims were fraudulent because the devices were never purchased or provided to patients. This scheme resulted in the payment of $559,197.67 to the entities designated by Attorney Smith, which she later personally received due to other acts of fraud.

Counts 2-4: Wire Fraud

¶6    On or about September 2, 2014, Attorney Smith, without the knowledge or consent of the business owner, changed the bank account that received Medicaid payments from Healthy Feet's JPMorgan Chase business account to her personal account at Regions Bank. Then, between September 2, 2014 and December 3, 2022, Attorney Smith fraudulently received approximately $1,194,942.07 in wired transfers of Medicaid payments that were intended to be received by Healthy Feet or its owner. As one example, on or about July 31, 2019, Attorney Smith fraudulently caused Medicaid to deposit approximately $24,339.38 into her personal Regions Bank account.

¶7     Additionally, Attorney Smith jointly owned residential property on Mallard View Lane, Indianapolis, Indiana, with her former spouse. On or about April 17, 2023, and without knowledge or consent of her former spouse, Attorney Smith agreed to sell the property to a property development company for approximately $380,000. Between April 22, 2023 and April 26, 2023, Attorney Smith used her personal email account to send and receive messages and documents to and from the title company regarding the sales transaction, including a form indicating that all proceeds from the sale should be conveyed to her and not split with her former spouse. Attorney Smith also fraudulently prepared a quitclaim deed, forging her former spouse's signature and a notary signature, the effect of which was to convey all interest in the property to Attorney Smith. Attorney Smith recorded the fraudulent deed, closed the property transaction without her former spouse's knowledge, and received approximately $347,948.79 in net proceeds from the sale.

¶8     Separately, Attorney Smith had a relative who owned residential property on Kessler Boulevard North Drive, Indianapolis, Indiana. On April 4, 2023, Attorney Smith electronically submitted a fraudulent application to the Indiana Homeowner Assistance Fund (IHAF) for monthly mortgage payment assistance and mortgage reinstatement assistance for the residence. The application falsely represented that Attorney Smith was her then-deceased relative. On June 13, 2023, Attorney Smith forged the signature of her relative on documents, including a promissory note, a closing approval form, and a mortgage, and transmitted said documents in order to complete the IHAF application process. Around June 20, 2023, IHAF paid $6,696.83 in mortgage reinstatement assistance for the mortgage loan on the Kessler Boulevard property.

Counts 5-8: Tax Evasion

¶9     For tax years 2018 through 2021, Attorney Smith willfully failed to file federal income tax returns for herself, failing to report approximately $1,299,179.01 in income. In each tax year, Attorney Smith also undertook deliberate acts to evade assessment of tax, including preparing false tax forms for the owner of Healthy Feet. In an effort to conceal the income that she had fraudulently received, Attorney Smith falsely included Medicaid payments on the business owner's individual income tax returns.

4

¶10 In 2023, the OLR began an investigation into violations of SCRs 20:8.4(b) and (c), based on Attorney Smith's criminal conduct. Attorney Smith's petition acknowledges that she "cannot successfully defend [herself] against the professional misconduct being investigated by OLR . . . related to the criminal conduct described above[.]" Attorney Smith represents that she does not maintain a law office, has no clients, and has no intention to practice law in the future. Attorney Smith further indicates that she filed her petition for consensual license revocation freely, knowingly, and voluntarily, and acknowledges that she is forfeiting her right to contest the professional misconduct allegations relating to her criminal conduct described above. Attorney Smith also acknowledges that if her petition is granted, she will be subject to the provisions of SCR 22.26 (activities following suspension or revocation).

¶11 The OLR reports that it supports Attorney Smith's petition for consensual license revocation and requests that the court revoke Attorney Smith's license to practice law in Wisconsin. The OLR states that "Smith's misconduct is serious" and that "revocation is warranted under the circumstances in this matter" based on the nature of Attorney Smith's underlying criminal conduct and the amount of money involved.

## Analysis

¶12 We conclude that the conduct alleged in the federal criminal information, to which Attorney Smith pleaded guilty, and which is recounted in her petition, provides a sufficient basis to conclude that Attorney Smith violated SCRs 20:8.4(b) and (c). As this court has previously stated, "[o]ur cases have . . . repeatedly found violations of SCR 20:8.4(b) even though there has been no connection established between the attorney's criminal act and the attorney's legal services to particular clients." *In re Disciplinary Proceedings Against Inglimo*, 2007 WI 126, ¶49, 305 Wis. 2d 71, 740 N.W.2d 125 (collecting prior cases finding that criminal conduct involving serious financial crimes, including tax evasion, constitute violations of SCR 20:8.4(b)). As we explained in *Inglimo*, "[t]he connection required for a violation of SCR 20:8.4(b) is not between a criminal act and the lawyer's provision of legal services, but rather is between a criminal act and a lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." *Id.* Furthermore, this court has previously found that financial crimes involving conversion of funds and falsifying financial documents violate SCR 20:8.4(c). *See In re Disciplinary Proceedings Against Gedlen*, 2007 WI 121, ¶¶4-19, 305 Wis. 2d 34, 739 N.W.2d 274 (multiple

instances of criminal conversion of client trust funds and real estate proceeds in attorney's divorce violated SCR 20:8.4(c)); *In re Disciplinary Proceedings Against Felli*, 2007 WI 49, ¶11, 300 Wis. 2d 271, 730 N.W.2d 892 (attorney violated SCR 20:8.4(c) by "intentionally attempt[ing] to divert assets from his client's trust account to his motorcycle business").

¶13 Thus, the fact that Attorney Smith's victims were a business owner, a former spouse, and a relative, rather than clients, makes no difference in the analysis. The facts set forth in the criminal pleadings and Attorney Smith's petition establish both that Attorney Smith committed criminal acts that reflect adversely on her "honesty, trustworthiness or fitness as a lawyer in other respects" and that she "engage[d] in conduct involving dishonesty, fraud, deceit or misrepresentation" within the meaning of SCRs 20:8.4(b) and (c).

¶14 We further conclude that revocation of Attorney Smith's license to practice law in Wisconsin is the only appropriate sanction for her misconduct. This court has repeatedly granted petitions for consensual license revocation based on criminal conduct involving tax evasion, filing false tax returns, wire fraud, and other serious financial crimes. *See, e.g., In re Disciplinary Proceedings Against Miller*, 158 Wis. 2d 396, 462 N.W.2d 520 (1990) (convictions for attempted federal tax evasion and filing a false income tax return); *In re Disciplinary Proceedings Against Schierland,* 2004 WI 140, 276 Wis. 2d 11, 688 N.W.2d 653 (conviction for filing a false tax return); *In re Disciplinary Proceedings Against Paulus*, 2004 WI 71, 272 Wis. 2d 143, 682 N.W.2d 326 (conviction for bribery while in public office and filing a false tax return); *In re Disciplinary Proceedings Against Hurtgen*, 2009 WI 92, 321 Wis. 2d 280, 772 N.W.2d 923, *reinstatement granted*, 2015 WI 92, 364 Wis. 2d 576, 869 N.W.2d 490 (conviction for aiding and abetting wire fraud related to financing of medical facility construction project). Likewise, in *In re Disciplinary Proceedings Against Semancik*, 2015 WI 31, 361 Wis. 2d 441, 862 N.W.2d 579, we revoked the license of an attorney based on a criminal conviction for theft by embezzlement. And in *In re Disciplinary Proceedings Against Lein*, 2024 WI 34, 413 Wis. 2d 1, 9 N.W.3d 778, we revoked the license of an attorney convicted of federal wire fraud and tax fraud.

¶15 IT IS ORDERED that Attorney Leslie M. Smith's petition for consensual license revocation is granted.

¶16     IT IS FURTHER ORDERED that the license of Attorney Leslie M. Smith to practice law in Wisconsin is revoked effective the date of this order.

¶17     IT IS FURTHER ORDERED that Attorney Leslie M. Smith shall comply with the requirements of SCR 22.26 relating to activities following revocation.

IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
ATTORNEY LESLIE M. SMITH
JUSTICE ZIEGLER., concurring


ANNETTE KINGSLAND ZIEGLER, J., with whom REBECCA GRASSL BRADLEY, HAGEDORN, KAROFSKY, and PROTASIEWICZ, JJ., join, concurring.

¶18    I concur in the court's order revoking Attorney Smith's license to practice law in Wisconsin. I write separately to point out that in Wisconsin the "revocation" of an attorney's law license is not truly revocation because the attorney may petition for reinstatement after a period of five years. *See* SCR 22.29(2). I believe that when it comes to lawyer discipline, courts should say what they mean and mean what they say. We should not be creating false perceptions to both the public and to the lawyer seeking to practice law again. *See In re Disciplinary Proceedings Against Moodie*, 2020 WI 39, 391 Wis. 2d 196, 942 N.W.2d 302 (Ziegler, J., dissenting). And, as I stated in my dissent to this court's order denying Rule Petition 19-10, *In the Matter of Amending Supreme Court Rules Pertaining to Permanent Revocation of a License to Practice Law in Attorney Disciplinary Proceedings*, I believe there may be rare and unusual cases that would warrant the permanent revocation of an attorney's license to practice law. *See* S. Ct. Order 19-10 (issued Dec. 18, 2019) (Ziegler, J., dissenting).

¶19    For the foregoing reason, I concur.

1